UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA LEE GUTHRIE,

      Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

Case No. 18-13784

Robert H. Cleland
United States District Judge

Stephanie Dawkins Davis
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (ECF Nos. 14, 16)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On December 6, 2018, plaintiff Joshua Lee Guthrie filed the instant suit.

(ECF No. 1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3),

District Judge Robert H. Cleland referred this matter to the undersigned to review

the Commissioner's unfavorable decision denying Guthrie's claim for a period of

disability and disability insurance benefits.  (ECF No. 3).  This matter is before the

Court on cross-motions for summary judgment.  (ECF Nos. 14, 16).

### B.    Administrative Proceedings

Guthrie filed an application for a period of disability and disability insurance

benefits on March 16, 2016, alleging disability beginning on December 20, 2014.

(Tr. 12).[1]  The claims were initially disapproved by the Commissioner on August
5, 2016.  *Id*.  Guthrie requested a hearing and on December 14, 2016, he appeared
with counsel, before Administrative Law Judge ("ALJ") Beth J. Contorer, who
considered the case *de novo*.  (Tr. 58-93).  In a decision dated March 21, 2018, the
ALJ found that Guthrie was not disabled.  (Tr. 9-21).  Guthrie requested a review
of this decision and the ALJ's decision became the final decision of the
Commissioner when the Appeals Council, on October 16, 2019, denied his request
for review.  (Tr. 1-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th
Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that
plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for
summary judgment be **GRANTED**, and that the findings of the Commissioner be
**AFFIRMED**.

## II.   FACTUAL BACKGROUND

### A.   ALJ Findings

Guthrie, born May 25, 1976, was 38 years old on the alleged disability onset
date.  (Tr. 20).  He has past relevant work as a slot technician and IT director, both
of which are skilled and medium.  (Tr. 19).  Guthrie completed the 12th grade and

---

[1] The Administrative Record appears on the docket at entry number 11.  All references to
the same are identified as "Tr. "

lives with his wife and two young sons.  (Tr. 62-63).  Guthrie stopped working on

December 20, 2014 because of his low back pain, knee injury, shoulder injury and

pinched nerve.  (Tr. 205).

The ALJ applied the five-step disability analysis and found at step one that

Guthrie had not engaged in substantial gainful activity since December 20, 2014,

the alleged onset date.  (Tr. 14).  At step two, the ALJ found that Guthrie's

degenerative joint disease status post arthroscopic surgery of the right knee, history

of right quad tear, degenerative disc disease of the lumbar spine, and asthma were

"severe" within the meaning of the second sequential step.  (Tr. 15).  However, at

step three, the ALJ found no evidence that Guthrie's impairments singly or in

combination met or medically equaled one of the listings in the regulations.  (Tr.

15).

Thereafter, the ALJ assessed Guthrie's residual functional capacity ("RFC")

as follows:

> After careful consideration of the entire record, the
> undersigned finds that the claimant has the residual
> functional capacity to perform light work as defined in
> 20 CFR 404.1567(h), except no more than occasional
> crouching; kneeling should be limited to occasional on
> the right; and the claimant needs to avoid concentrated
> exposure respiratory irritants.

(Tr. 15).  At step four, the ALJ found that Guthrie was not able to perform his past

relevant work.  (Tr. 19-20).  At step five, the ALJ denied Guthrie benefits because

she found that he had not been under a disability from December 20, 2014, through the date of the decision and there were significant jobs that exist in the national economy that he could perform with his RFC.  (Tr. 20-21).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005);

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800

F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a

scintilla of evidence but less than a preponderance; it is such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of

Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. Appx. 521, 526 (6th Cir. 2006).

    B.   <u>Governing Law</u>

    The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled.  F. Bloch, Federal Disability Law and Practice § 1.1 (1984).  While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis set forth at 20 C.F.R. §§ 404.1520, 416.920.  Essentially, the ALJ must determine whether:  (1) the plaintiff is engaged in significant gainful activity; (2) the plaintiff has any severe impairment(s); (3) plaintiff's impairments alone or in combination meet or equal a Listing; (4) the claimant is able to perform past relevant work; and (5) if unable to perform past relevant work, whether there is work in the national economy that the plaintiff can perform.  (*Id*.).  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work."  *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform

given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at
241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the
decision must be affirmed even if the court would have decided the matter
differently and even where substantial evidence supports the opposite conclusion.
*McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where
substantial evidence supports the ALJ's decision, it must be upheld.

C.    <u>Analysis and Conclusions</u>

1.    Sentence six

Guthrie first argues that this matter should be remanded to the
Commissioner for consideration of new and material evidence pursuant to sentence
six of § 405(g).  "Sentence six of § 405(g) addresses situations where a Claimant
submits new evidence that was not presented to the ALJ but would alter the ALJ's
ultimate decision." *Courter v. Comm'r of Soc. Sec.*, 479 Fed. Appx. 713, 725 (6th
Cir. 2012).  Sentence Six provides that the court may at any time

> order additional evidence to be taken before the
> Secretary, but only upon a showing that there is new
> evidence which is material and that there is good cause
> for the failure to incorporate such evidence into the
> record in a prior proceeding, and the Commissioner of
> Social Security shall, after the case is remanded, and after
> hearing such additional evidence if so ordered, modify or
> affirm the Commissioner's findings of fact or the
> Commissioner's decision, or both.

9

42 U.S.C. § 405(g).  Evidence is new if it was not in existence at the time of the hearing.  *See Foster*, 279 F.3d at 357.  "Material evidence is evidence that would likely change the Commissioner's decision."  *Bass*, 499 F.3d at 513 (citation omitted).

Guthrie offers several documents in support of his sentence six argument, which were presented to the Appeals Council:  1) Exhibit A - progress notes from Tricounty Neurology and Sleep dated October 27, 2017 until January 5, 2018 (Tr. 34-39); 2) Exhibit B - EMG study dated January 5, 2018 (Tr. 26-33); 3) Exhibit C - article entitled "Saphenous Neuritis: A Poorly Understood Cause of Medial Knee Pain" (Tr. 40-43); 4) Exhibit D - article entitled "Saphenous Neuropathy Following Medial Knee Trauma" (Tr. 44-52); and 5) Exhibit E - Letter from Unum dated June 8, 2017 (Tr. 53-57).  The Appeals Council found that the letter from Unum and the two articles did "not show a reasonable possibility that it would change the outcome of the decision."  (Tr. 2).  The Appeals Council found that the Tricounty Neurology records dated from October 27, 2017 through January 5, 2018 did "not relate to the period at issue" and "does not affect the decision about whether you were disabled beginning on or before March 21, 2018."  (Tr. 2).  Guthrie argues that the Appeals Council findings are not based on substantial evidence.

More specifically, Guthrie's argument focuses on Dr. Dutcheshon's June 14, 2017 responses to Dr. Hammon's inquiry for an updated opinion and the

TriCounty Neurology records from October 27, 2017 through January 5, 2018, including the EMG study.[2]  Guthrie maintains that the evidence is "new" because it was not before the ALJ when she issued her decision and because it is dated after the hearing took place.  In response, the Commissioner says that whether the evidence is "new" does not depend on whether it was before the ALJ as Guthrie suggests.  The Commissioner argues that the articles are from 2002 and 2004 and Dr. Dutcheshen's opinions is dated June 14, 2017.  Consequently, the proffered evidence was available before the September 2017 hearing.  The Commissioner also argues that the progress notes and the EMG are not "new" because they were available before the ALJ issued her decision on March 21, 2018.  *See Abbott v. Sullivan*, 905 F.2d 918, 925 n.5 (6th Cir. 1990) (affirming district court's denial of motion for remand because "this evidence was available prior to the Secretary's final decision, and hence could not be used to reopen the Secretary's final decision").  In the alternative, the Commissioner argues that, at a minimum, the records predating the hearing – including Dr. Dutcheshen's opinion – are not "new."  *See Foster*, 279 F.3d at 357.

---

[2] Guthrie later relies on information from the articles about Saphenous Neuropathy to explain what it is in support of his materiality argument but does not assert in his brief that this evidence is "new" for purposes of sentence six.  Information such as that contained in the articles, can, in any event, be used by the Court for definitional purposes.  *See e.g.*, *McLaren-Knipfer v. ArvinMeritor, Inc.*, 876 F.Supp.2d 913, 921 (E.D. Ky. 2012) ("Courts routinely take judicial notice of medical websites such as the NIH for definitional purposes…").

The parties offer several points of demarcation as to the timing of "new"
evidence.  Guthrie refers to new evidence as evidence that the ALJ either did not
have access to when the decision was issued or that came into existence after the
hearing.  The Commissioner argues that the neurology notes and EMG study were
available to Guthrie before the ALJ's decision and thus, cannot be "new."  The
Commissioner's argument suggests that "new" evidence must either be created
after the ALJ's decision or, if created before the decision issued, it must be
unavailable to the claimant.  However, the undersigned is not persuaded by the
Commissioner's reliance on footnote five from *Abbott v. Sullivan* to support a
requirement that evidence in existence before the ALJ issues a decision cannot be
"new."  In *Abbott*, the court noted that it did not dispute the trial court's finding
that certain evidence was available before the Secretary's decision and thus, could
not be used to reopen a final decision, citing *Willis v. Sec'y of Health and Human
Serv.*, 727 F.2d 551, 554 (6th Cir. 1984).  In *Willis*, however, the court expressly
declined to determine whether the disputed evidence was either "new" or
"material" and decided the case based solely on the question of "good cause."

Furthermore, contrary to the footnote in *Abbott*, ample authority exists
holding that evidence created after the hearing but before the decision is issued can
constitute "new" evidence.  For example, in *Hickey v. Comm'r of Soc. Sec.*, 2017
WL 5710459, *6 (E.D. Mich. Oct. 30, 2017), report and recommendation adopted,

2017 WL 5667977 (E.D. Mich. Nov. 27, 2017), the court found that evidence that

did not exist before the *hearing* was "new," consistent with *Foster's* holding that

evidence is "new" if it was "not in existence or available to the claimant at the time

of the administrative proceeding." *Id.* Similarly, in *Bellmore-Byrne v. Comm'r of

*Soc. Sec.*, 2016 WL 11472796 (E.D. Mich. June 23, 2016), report and

recommendation adopted, 2016 WL 5219541 (E.D. Mich. Sept. 22, 2016), the

court concluded that evidence that came into existence after the hearing was "new"

for purposes of sentence six remand inquiry. This interpretation is consistent with

controlling authority from the Sixth Circuit addressing the standard for remand

under sentence six as requiring a "reasonable justification for the failure to acquire

and present the evidence of inclusion *in the hearing before the ALJ*." *Foster*, 279

F.3d at 357. While *Foster* was specifically addressing the good cause prong, it

would make little sense to impose a different timing rule on the good cause prong

of the sentence six remand analysis than applies to the "new" evidence prong.[3]

Accordingly, the undersigned concludes that the medical records created after the

date of the hearing are "new" for purposes of the sentence six remand analysis.

---

[3] While some cases speak in terms of "new" evidence having been created after the
decision was issued by the ALJ, the undersigned does not read those cases as concluding that
new evidence *must* be created after the ALJ decision. *See e.g.*, *Robinson v. Comm'r of Soc. Sec.*,
2018 WL 3641750, *4 (N.D. Ohio July 31, 2018) (Evidence appeared to be "new" because it
was generated after the date of decision but was not material.); *Harvey v. Comm'r of Soc. Sec.*,
2017 4216585, *9 (6th Cir. Mar. 6, 2017) (Evidence created after the ALJ issued a decision was
"obviously" new.).

On the other hand, Guthrie offers no basis for the court to conclude that Dr. Dutcheson's opinion, which was created months before the hearing, can be considered "new."  It is true that just because Dr. Dutcheson's opinion was created in June 2017 does not necessarily mean it was "available" to Guthrie before the September 2017 hearing, but Guthrie does not develop any argument that the record, was, in fact, unavailable to him before the hearing.  *See e.g.*, *Hickey*, at *6, n. 3 (Court declined to address the plaintiff's contention that a medical record is not necessarily immediately available on the date of the record.).  Guthrie asserts in the reply that the Commissioner conflates "existence" and "availability," arguing that the June report was not "available" to him before merely because it existed before the hearing.  Again, that may be true, but Guthrie makes no effort to explain how or why the June report was not available to him before the hearing.  Accordingly, the undersigned finds that he did not meet his burden of establishing that the June 2017 report is "new."

Having determined the neurology records are "new," the undersigned must now determine whether they constitute "material" evidence.  Guthrie argues that the new evidence is material because it relates to the period before the ALJ issued her decision, contrary to the conclusion of the Appeals Council.  He also asserts that there is a reasonable possibility that the new evidence would change the ALJ's decision.  According to Guthrie, the EMG report and records from Tricounty

14

Neurology covering the period from October 27, 2017 through January 5, 2018 finally establish a diagnosis for his persistent right knee pain; the condition which had been present for at least three years, was caused by Saphenous Neuropathy, a rare, difficult to diagnose condition.  (Tr. 26-39).  Guthrie has complained of a sudden onset of right knee pain since November 2014 but did not establish a precise diagnosis for his knee pain.  An MRI of the right knee dated February 16, 2016 documented "[p]ersistent mild edema in quadriceps fat pad with interval improvement" and findings which "may relate to altered patellofemoral mechanics."  (Tr. 446).  Dr. Karo, the consultative physician, also noted that there was no "definitive diagnosis" to explain Guthrie's right knee pain.  (Tr. 507).  Moreover, notwithstanding the lack of a definitive diagnosis, the ALJ stated at the conclusion of the hearing that "as long as the medical records don't come back saying that Mr. Guthrie has gone to the doctor saying he feels great, he's running and skipping, I'm inclined to pay this."  She further indicated that she just needed "updated records" that "are not inconsistent with what you've told me."  (Tr. 91).  According to Guthrie, this new evidence provides an objective basis for his subjective complaints of pain, which is particularly important because the ALJ ultimately discredited his subjective complaints.

In response, the Commissioner contends that the new treatment records do not establish a definitive diagnosis.  Rather, Guthrie's new neurologist, Narayan

Verma, M.D., reviewed the EMG findings and stated that the results "support the possibility of right gonalgia paresthetica as right saphenous neuropathy is present and severe." (Tr. 30). He then reiterated that the results were "suggestive of gonalgia paresthetica." (Tr. 38). He planned to start Guthrie on Lyrica, and if that did not work, he would try a regional block. *Id*. Accordingly, the Commissioner maintains that the new evidence fails to provide a definitive diagnosis. *See Young*, 925 F.2d at 151 ("[I]t is well established that a diagnosis alone does not indicate the functional limitations caused by an impairment."); accord *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988). More importantly, the ALJ had already acknowledged that Guthrie suffered from a right knee impairment that caused pain symptoms and associated limitations. (Tr. 15). Thus, evidence of a new diagnosis would not alone establish greater functional limitations. The Commissioner maintains that any potential prejudice from the lack of consideration of a new diagnosis is further ameliorated by the fact that the ALJ had already considered objective examination findings that post-date Dr. Verma's examination and tentative diagnosis of Guthrie. Specifically, on January 13, 2018, just days after Dr. Verma examined him, consultative examiner Dr. Karo observed that Guthrie had mostly normal objective functioning, including intact cranial nerves, no evidence of focal muscle atrophy in all extremities, normal muscle tone, 5/5 strength, normal sensation, intact coordination, and no evidence of knee clonus.

(Tr. 17, 507-11).  Although he did have an antalgic gait and used a cane, Dr. Karo

noted that he was able to squat and bear weight without pain, and there were "no

physical limitations to sitting, standing, or walking."  *Id*.  As the ALJ discussed,

this was consistent with the previous evidence of record showing objectively

normal functioning.  (*See e.g.*, Tr. 18, citing Tr. 284, 302, 445-46).  The ALJ noted

Dr. Karo's opinion that examination showed "no clinical or objective findings to

support any inability," and the clinical evidence did not support continued use of a

cane.  (Tr. 17, 507-11).  Accordingly, the Commissioner contends that Guthrie fails

to show that additional clarity regarding the cause of his subjective symptoms

would alter the ALJ's reliance on the objective evidence of his functional ability.

Furthermore, contrary to Guthrie's argument, while the ALJ reasonably

considered the lack of an objective basis for Guthrie's complaints, the

Commissioner points out that the ALJ did not solely rely on this basis in

discounting his subjective complaints.  Rather, the ALJ also considered that

Guthrie only reported an average pain level of 3 to 4 out of 10, did not present to

providers in distress, made inconsistent statements about his abilities, and engaged

in various activities of daily living.  (Tr. 16-19).  The ALJ also considered the

opinion evidence in the record that Guthrie remained able to work.  (Tr. 19).

Specifically, the ALJ noted that Guthrie's orthopedic surgeon Dr. Viviano had

opined that he was merely limited to "no heavy lifting," (Tr. 19, 368), and that the

17

reviewing consultant, Dr. Layne, opined that he could perform the exertional requirements for medium work. (Tr. 19, 101). Although the ALJ deviated from these opinions because the physicians did not have the benefit of evidence regarding Guthrie's subsequent knee surgery, the Commissioner contends that the ALJ reasonably considered the fact that neither physician opined that Guthrie was disabled. (Tr. 19). Based on the ALJ's consideration of Guthrie's inconsistent statements throughout the record, his activities, and the opinions of Drs. Viviano and Layne, the Commissioner maintains that there is no reasonable probability that an additional right knee diagnosis would have significantly altered the ALJ's decision. *See Foster*, 279 F.3d at 357.

The undersigned agrees with the Commissioner's assessment of materiality. Medical evidence is material where there is a "reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Foster*, 279 F.3d at 357 (quoting *Sizemore v. Sec'y of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988)). A post-decision evaluation is not material if it is cumulative of evidence already in the record, or if it merely shows a worsening condition. *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 277-78 (6th Cir. 2010). Even accepting the new diagnosis, the January 2018 examination records are relatively unremarkable. Guthrie's right lower extremity was swollen and edematous; he had mild right lower extremity

weakness; and he was not inclined to bend his right knee. (Tr. 39). However, he was moving all extremities both proximally and distally, had normal tone and no abnormal movements, all sensations were intact except in the right lower extremity saphenous distribution. While he had an antalgic gait, his deep tendon and plantar reflexes were normal. *Id*. These new records do not suggest that Guthrie is more limited than the ALJ found him to be, and they do not suggest that he is unable to do any work, including sedentary work. *See e.g.*, *Kucharski v. Comm'r of Soc. Sec.*, 2013 WL 5313444, at *9 (E.D. Mich. July 26, 2013), report and recommendation adopted, 2013 WL 5308282 (E.D. Mich. Sept. 20, 2013) ("While this material also includes a number of treating records stating that Plaintiff reported left knee pain, the accompanying objective studies and diagnostic test results do not support greater restrictions than those found in the RFC."); *Diggs v. Colvin*, 2017 WL 1018150, at *4 (E.D. Mich. Mar. 16, 2017) ("Contrary to Plaintiff's position, however, Dr. Czarnota's findings would not have convinced the ALJ to impose a more restrictive RFC, and thus, Plaintiff has not shown materiality under § 405(g)."). Here, Guthrie does not explain how the new records show that he was more limited than the ALJ found. And, the mere diagnosis of a condition does not establish disability. *Higgs v. Bowen*, 880 F.2d at 863. As such, the undersigned is not persuaded that the ALJ's comments at the hearing -- ("as long as the medical records don't come back saying that Mr. Guthrie has gone to

the doctor saying he feels great, he's running and skipping, I'm inclined to pay this" and she just needs "updated records" that "are not inconsistent with what you've told me." Tr. 91) – suggest that a sentence six remand is necessary or appropriate.  That is, while the ALJ suggests that benefits were likely to be awarded absent additional contrary evidence, that is not the precise inquiry before the Court.  Rather, the Court must decide whether the particular records at issue are material and likely to cause the ALJ to make a different disposition than the one actually made by the ALJ.  While the records do not appear to raise any inconsistency, they also in and of themselves do not establish or even suggest greater limitations than those assessed.  Indeed, the definition that plaintiff has provided for saphenous neuritis provides that it can have an "indolent" (i.e. causing little or no pain)[4] "and protracted course."  ECF No. 14, PageID.589.  Hence, the proposed evidence does not meet the necessary standard that its introduction raises a reasonable probability of a different result and, for the reasons outlined above, the evidence is not material.

Moreover, the mere existence of a condition does not equate to disability. That is, simply because Guthrie suffers from a certain condition or carries a certain diagnosis does not equate to disability or a particular RFC.  Rather, the residual functional capacity circumscribes "the claimant's residual abilities or what a

---

[4] *https://www.merriam-webster.com › dictionary › indolent*

claimant can do, not what maladies a claimant suffers from-though the maladies will certainly inform the ALJ's conclusion about the claimant's abilities." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240 (6th Cir.2002); *see also Roark v. Astrue*, 2011 WL 1226874, at *4 (E.D. Ky. 2011) ("it is the demonstrated functional limitations imposed by a condition in a particular individual, not the mere diagnosis, that determine disability").

The undersigned is also not persuaded that the present circumstances are similar to those in *Hickey* or *Bellmore-Byrne*, where sentence six remands were found appropriate.  In *Hickey*, the claimant alleged debilitating weakness of all of her muscles and muscle loss, her providers only diagnosed kidney impairments which would not have caused such symptoms, and the ALJ relied in part on the lack of clear medical explanation for the claimant's alleged symptoms.  *Hickey*, 2017 WL 5710459, at *6-8.  However, after the hearing, a muscle biopsy showed that the claimant suffered from a chronic neurogenic disease causing her symptoms, as well as abnormal examination findings including "an odd, highly variable diskinetic [sic] gait, involving both lower extremities, with frequent twitching, jerking, and a long stride length," and her doctor opined that she required a permanent disability parking placard and housing accommodations to permit use of a wheelchair and walker.  *Id*.  The court found that this evidence might alter the ALJ's determination that the claimant remained able to perform

light work.  *Id*.  In contrast, in Guthrie's case, the diagnosis was not accompanied by significantly abnormal examination findings and does not suggest any limitations greater than those found by the ALJ.  In *Bellmore-Byrne*, the new evidence reflected findings significantly more severe than those presented to the ALJ, specifically, subsequent "metastasis of Plaintiff's breast cancer to her lungs and bones" which could reasonably have "occurred over an extended period of time" and related to her condition prior to the hearing.  *Bellmore-Byrne*, 2016 WL 11472796, at *7.  Here, the only materially different evidence set forth the records, a possible new diagnosis/nerve impairment, does not, by itself, create a reasonable probability that the ALJ would have found Guthrie disabled nor does it establish that Guthrie's limitations were actually worse than they appeared when the ALJ issued the decision.  Accordingly, the undersigned does not find that the new evidence is "material" for purposes of a sentence six remand.[5]

2.      Assessment of subjective symptoms

"A claimant's testimony may be discounted if it is contradicted by the medical reports and other evidence in the record."  *Harley v. Comm'r of Soc. Sec.*, 485 Fed. Appx. 802, 804 (6th Cir. 2012); 20 C.F.R. § 404.1529(c).  In assessing a

---

[5]  Given the conclusion that the new evidence is not "material," the undersigned need not determine whether Guthrie has established "good cause" for the delayed submission of evidence or remark on the Appeals' Council's conclusion that the evidence did not pertain to the relevant time period.

claimant's subjective symptoms, the rulings and regulations direct an ALJ to focus

on the consistency of the complaints with the other evidence in the record.

*Barncord v. Comm'r of Soc. Sec.*, 2017 WL 2821705, at *8 (S.D. Ohio June 30,

2017).  The Sixth Circuit has characterized SSR 16-3p as merely eliminating "'the

use of the term credibility ... to clarify that subjective symptom evaluation is not an

examination of an individual's character.'"  *Dooley v. Comm'r of Soc. Sec.*, 656

Fed. Appx. 113, 119 n.1 (6th Cir. 2016) (citation and internal quotation marks

omitted); SSR 16-3p, 2016 WL 1119029, at *1.  "SSR 16-3p instructs ALJs in

accordance with the applicable regulations to consider all of the evidence in the

record in evaluating the intensity and persistence of symptoms after finding the

claimant has a medically determinable impairment."  *Coffey v. Comm'r of Soc.*

*Sec.*, 2017 WL 3528952, at *8 n.4 (E.D. Tenn. Aug. 16, 2017).  As to a claimant's

subjective symptoms, the regulations require an ALJ to consider several factors,

including: (1) daily activities; (2) location, duration, frequency, and intensity of

pain or other symptoms; (3) precipitating and aggravating factors; (4) the type,

dosage, effectiveness, and side effects of any medication taken; (5) treatment, other

than medication, to relieve pain or other symptoms; (6) any measures used to

relieve pain or other symptoms; and (7) other factors concerning functional

limitations and restrictions due to pain or other symptoms.  20 C.F.R.

§ 404.1529(c)(3); SSR 16-3p, 2016 WL 1119029, at *7 ("In addition to using all of

the evidence to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, we will also use the factors set forth in 20 CFR 404.1529(c)(3).").

Guthrie argues that the ALJ failed to consider all of the regulatory factors in her decision and unduly focused on the single factor of objective medical evidence. According to Guthrie, SSR 16-3p does not permit an ALJ to unfavorably evaluate an individual's symptoms based solely on objective medical evidence. SSR 16-3p, 2016 WL 1119029 (S.S.A. 2016). Guthrie also points out that he has done everything asked of him by his medical providers. Of various treatment modalities tried, Guthrie found no pain relief from the use of heat, ice, ibuprofen and Tylenol, he tried diclofenac without success and Norco provided "no significant relief." (Tr. 443-44). He also tried a knee injection, "which 'burned for three days' and did not appreciably improve his pain." (Tr. 444). Guthrie "completed physical therapy and injections without relief." (Tr. 497). He also had an invasive procedure, a right knee arthroscopy, in the hopes of determining the cause of his knee pain. (Tr. 69, 497, 505). Guthrie argues that the ALJ failed to recognize, in accordance with SSR 16-3p, his persistent efforts to obtain relief from his pain or other symptoms may support the intensity and persistence of symptoms.

In response, the Commissioner contends that the ALJ did not evaluate Guthrie's symptoms based solely on objective medical evidence. The undersigned

agrees with the Commissioner's analysis of the ALJ's assessment of Guthrie's subjective symptoms, which is far broader than suggested by Guthrie and does not solely focus on the objective medical evidence. For instance, the ALJ also expressly considered other factors including Guthrie's statements about his symptoms, observations by providers and the ALJ, and his activities. (Tr. 16-19). Specifically, the ALJ pointed out that during multiple office visits in 2015, Guthrie reported his knee pain was a 3 to 4 out of 10 on average. (Tr. 18, 318, 284, 320, 322, 324). Physical therapy notes from May 2015 reflected that he had either normal, or no more than moderate, difficulty with physical activities. (Tr. 18, citing Tr. 441; *see also* Tr. 328, 351, 437-39 (generally documenting at most moderate difficulty)). Two weeks after the September 2016 knee arthroscopy, Guthrie reported doing okay, described his residual pain symptoms as "moderate" and endorsed an "average" level of functioning. (Tr. 18, 457). Finally, at the hearing, he reported that his pain was a "three." (Tr. 17-19, 83). Accordingly, the ALJ reasonably found that Guthrie's repeated statements about his pain level undercut his allegations of disabling symptoms and this finding is supported by substantial evidence. *See* SSR 16-3p, 2017 WL 5180304, at *8 ("[W]e will consider the consistency of the individual's own statements. To do so, we will compare statements an individual makes in connection with the individual's claim

for disability benefits with any existing statements the individual made under other circumstances.").

The ALJ also noted that despite Guthrie's allegations of "a disabling level of pain, he regularly presents in no distress to office visits."  (Tr. 18-19).  *See* 20 C.F.R. § 404.1529(c)(3) ("We will consider all of the evidence presented, including . . . observations by our employees and other persons . . . .").  The ALJ pointed out that providers observed that he was not in any acute distress during examinations in December 2014, May 2016, and November 2016.  (Tr. 18, 302, 445, 460).  The ALJ also observed that at the hearing, although Guthrie sat on the floor for a portion of the hearing, he "exhibited no indication of distress and even laughed several times throughout the hearing."  (Tr. 17-19).

Next, the ALJ pointed to other inconsistencies in Guthrie's statements.  (Tr. 16-17, 19).  The ALJ noted that his statement in his June 2016 Function Report that he was able to drive at that time (albeit short distances), which contradicted his testimony at the September 2017 hearing that he had been unable to drive for "about three years."  (Tr. 16; compare Tr. 62, 76-77 with Tr. 219).  The ALJ also noted that Guthrie's initial testimony that he could have possibly performed bench-type work when he stopped working at his medium-exertion job in December 2014 was inconsistent with his later testimony that he had been unable to perform any

26

work at any time since December 2014.  (Tr. 16; compare Tr. 68-69 with Tr. 79-80).

The ALJ also considered Guthrie's reported activities.  (Tr. 16-17).  *See* 20 C.F.R. § 404.1529(c)(3)(i).  The ALJ discussed his statement in his August 2016 Function Report that he was able to perform personal care, prepare light meals, and perform household chores (although he rests between activities), and that he could lift "less than 30 pounds."  (Tr. 16, 217-21; accord Tr. 328, 351, 437-39, 441 (physical therapy notes reflecting that Guthrie had no difficulty with dressing, grooming, or meal preparation)).  The ALJ also considered Dr. Karo's notes from January 2018 reflecting Guthrie's report that he was independent with his basic activities of daily living.  (Tr. 17, 506).  Finally, in evaluating Guthrie's subjective complaints, the ALJ considered the evidence that his own treating provider, Dr. Viviano, and the reviewing State agency consultant, Dr. Layne, both opined that he was not disabled.  (Tr. 19, 101, 368).  And, while Guthrie argues that he attempted various treatment modalities for his knee pain, including the 2016 surgery, an injection, physical therapy, and pain medication such as ibuprofen, Tylenol, diclofenac, and Norco, and that the ALJ should have found that this supported his subjective complaints, the Commissioner points out that he failed to show that the record demonstrates persistent attempts at treatment as contemplated by the ruling.  *See* SSR 16-3p, 2017 WL 5180304, at *9 ("Persistent attempts to obtain relief of

symptoms, such as increasing dosages and changing medications, trying a variety of treatments, referrals to specialists, or changing treatment sources may be an indication that an individual's symptoms are a source of distress and may show that they are intense and persistent.").  Instead, as the ALJ discussed, Guthrie declined physical therapy after his knee surgery, (Tr. 18, 460), and told Dr. Karo that he "did not take any medications on a regular basis for pain to function," (Tr. 17, 505).  *See e.g.*, *Curler v. Comm'r of Soc. Sec.*, 561 Fed. Appx. 464, 473 (6th Cir. 2014) (affirming ALJ's finding that the "medical records would have documented more specific and frequent complaints" if plaintiff were truly disabled).  The Commissioner also points out that it was the ALJ's province to weigh any conflicting evidence, and she was entitled to find that the other factors set out above outweighed his reports that he attempted treatment without success.  *See Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("[W]e do not try the case de novo, [or] resolve conflicts in evidence . . . ."); *Mullins v. Sec'y of Health & Human Servs.*, 680 F.2d 472, 472 (6th Cir. 1982) ("Our task is not to reweigh the evidence. That is solely the province of the [Commissioner].").  The undersigned agrees that the ALJ appropriately weighed a broad array of evidence, medical and otherwise, to assess Guthrie's subjective symptoms.  And, that assessment is supported by substantial evidence in the record.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, and that defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).

The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: November 26, 2019                    s/Stephanie Dawkins Davis
                                           Stephanie Dawkins Davis
                                           United States Magistrate Judge